*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0166p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT
_____

GEORGE H. EDWARDS, JR.,
            *Petitioner-Appellant,*

                                        No. 09-5533

            *v.*

STEPHEN DEWALT, Warden,
            *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 08-00346—Jennifer B. Coffman, Chief District Judge.

Argued: December 1, 2011

Decided and Filed:  June 1, 2012

Before:  DAUGHTREY, COLE, and ROGERS, Circuit Judges.

_____

#### COUNSEL

_____

**ARGUED:** Craig I. Chosiad, JONES DAY, Washington, D.C., for Appellant.  Claire McCusker Murray, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Craig I. Chosiad, JONES DAY, Washington, D.C., for Appellant.   Claire McCusker Murray, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Charles P. Wisdom, Jr., David E. Middleton, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky for Appellee.  George H. Edwards, Jr., Belleville, Illinois, pro se.

_____

#### OPINION

_____

     ROGERS, Circuit Judge.  This habeas appeal ostensibly presents a difficult question of statutory interpretation involving the lingering effects of long-since superseded federal special parole statutes.  However, we do not need to reach the question because habeas relief must be denied on the basis of a parole regulation under

1

the regular parole scheme.  Petitioner contends that the parole regulation in question illegally circumvents a statutorily required exercise of case-by-case decision-making by the Parole Commission.  Because the regulation is a valid across-the-board exercise of the Commission's discretion, however, the district court properly denied habeas relief.

In 1985, petitioner George Edwards was convicted of distributing cocaine and sentenced to 15 years' imprisonment to be followed by a mandatory ten-year term of "special parole."  In 2000, Edwards was released on special parole.  This began a cycle during which Edwards repeatedly violated the terms of his special parole, was incarcerated, and was re-released on special parole.  By statute, each time Edwards violated the terms of his special parole, he forfeited credit for any time he spent in non-custodial supervision.  As a result, Edwards's term of special parole is not set to expire until 2017.  Edwards filed a habeas petition pursuant to the provisions of 28 U.S.C. § 2241, challenging the re-imposition of special parole, and the district court denied relief.  This decision was proper because, regardless of whether the Parole Commission has authority to reimpose a previously revoked term of special parole, Edwards still would have forfeited his time in non-custodial supervision under current parole regulations.

Because Edwards's 1985 conviction was a drug offense, the then-applicable federal parole statutes mandated that Edwards's period of incarceration was to be followed by a ten-year term of "special parole."  As this court has explained:

> Special parole was created in 1970 as an additional penalty for all drug offenses and was mandatory in all such cases until the Sentencing Reform Act replaced it with "supervised release."  Special parole is governed by 21 U.S.C. § 841, which Congress repealed in 1984, but which still applies to drug crimes committed before November 1, 1987.

*Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  Should a parolee violate the terms of his special parole, he forfeits credit for time spent in non-custodial supervision, colloquially referred to as "street time."  *Id.*  Once special parole is revoked, a parolee is usually imprisoned.  Upon a parolee's release from prison, he must serve the entire

original term of the special parole—here ten years—reduced only by the additional time spent in prison.

On February 8, 2000, Edwards was released from prison and began serving his ten-year term of special parole. Seven months later, Edwards had already violated the terms of his release by shoplifting, failing a drug test, and failing to provide personal and business records to his parole officer. His special parole was revoked on July 26, 2001, and Edwards returned to prison. The time Edwards spent in non-custodial supervision prior to the revocation did not count toward the fulfillment of his sentence. Edwards was released from prison in December 2001, and re-paroled with 3371 days remaining on his parole term—ten years, less the time he had been in custody since March 2001 (the date when he was taken into custody for the parole violations). Edwards was once again placed on special parole. In 2007, Edwards was convicted of wire fraud, and was sentenced to a year and a day in prison. Just before his scheduled release from prison, the Parole Commission executed a special-parole violator warrant to keep Edwards in federal custody. The Commission revoked Edwards's special parole, causing him to forfeit the "street time" he had accrued between December 2001 and December 2007. Edwards was released from prison on November 21, 2009, and was re-paroled to yet another ten-year term of special parole, less the time he spent in prison. The United States Parole Commission now calculates Edwards's release-from-parole date to be November 2017.

Edwards filed a petition for a writ of habeas corpus in federal district court pursuant to the provisions of 28 U.S.C. § 2241. Edwards asserted various procedural challenges to the revocation of his parole as well as a claim that, once revoked, "special parole cannot be reimposed—only a regular parole can be imposed." The district court denied Edwards's petition in its entirety, ruling that he suffered no deprivation of his rights under the federal constitution or any federal statutes. The district court found that the Parole Commission did not have authority to re-impose a term of special parole, citing *Dolfi v. Pontesso*, 156 F.3d 696, 698-99 (6th Cir. 1998). However, the court reasoned that this mistake was harmless because Edwards would have forfeited his

"street time" under regular parole as well. Edwards timely appealed what he perceives to be the continual re-imposition of the ten-year special-parole restrictions and also submits that his salient factor score—used to determine the date on which he should be released from prison—was miscalculated.

As an initial matter, 28 U.S.C. § 2241 is the proper vehicle for challenging the conditions of Edwards's parole. Although 28 U.S.C. § 2255 provides "the primary avenue for relief for federal prisoners protesting the legality of their sentence, . . . § 2241 is appropriate for claims challenging the execution or manner in which the sentence is served." *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Because Edwards is challenging the manner in which his parole is to be served, his claims were properly brought pursuant to the provisions of § 2241. "This court reviews de novo the district court's dismissal of a habeas petition filed pursuant to 28 U.S.C. § 2241." *Evans v. Zych*, 644 F.3d 447, 449 (6th Cir. 2011).

Because under current parole law Edwards's street time is forfeited anyway—as explained below—we need not decide the interesting and difficult issue of whether our decision in *Dolfi*—holding that a revoked special-parole term could not be reimposed—remains valid law after the Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000). Even when lower courts and litigants would like to know the answer, it is better not to decide legal issues, no matter how important, when the resolution of the question has no effect on the parties on appeal. *See* Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1255-63 (2006).

In *Dolfi*, we held that the Parole Commission did not have authority under 21 U.S.C. § 841(c) to impose a new term of special parole after revoking the original term.[1]

---

[1]21 U.S.C. § 841(c) provides:

A special parole term . . . may be revoked if its terms and conditions are violated. . . [T]he original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.

156 F.3d at 698-700.  We reasoned that the statute's use of the term "revoke" indicated that the special-parole term disappears and is replaced by a term of imprisonment that can be cut short only under traditional parole, under which the offender gets credit for street time.  *Id.* at 698-99.  The court relied on its previous conclusion regarding an "analogous point with respect to a successive term of supervised release under 18 U.S.C. § 3583(e)(3), the statute which replaced § 841(c) and contains almost identical language."[2]  *Id.* at 699 (citing *United States v. Truss*, 4 F.3d 437, 441 (6th Cir. 1993)).  In *Truss*, the court determined that § 3583(e)(3) contemplated only a complete revocation of supervised release, which prevented the imposition of successive new terms of supervised release.  4 F.3d at 441.  The *Dolfi* court stated, "Given the similarity of § 841(c) and § 3583(e)(3), we agree . . . that any attempt to distinguish the revocation of special parole from the revocation of supervised release is a distinction without a difference."  156 F.3d at 699 (internal quotations omitted).

The Supreme Court's decision in *Johnson v. United States* arguably compels a different conclusion.  In *Johnson*, the Supreme Court considered the meaning of the supervised release statute, § 3583(e)(3), and rejected *Truss*'s interpretation of the term "revoke."  *Johnson*, 529 U.S. at 704.  The Court recognized that if it "were to concentrate exclusively on the verb 'revoke,' [it] would not detect any suggestion that the reincarceration might be followed by another term of supervised release" because revoke conventionally means "to annul by recalling or taking back."  *Id.*  However, the court chose to embrace an "unconventional" definition of "revoke" because it found a distinction between the word "terminate" used in § 3583(e)(1) and the word "revoke" used in § 3583(e)(3).[3]  *Id.*  On the other hand, *Johnson* may be understood as being

---

[2]Section 3583(e)(3) authorizes a district court to:

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision . . . .

[3]Section 3583(e)(1) provides that "[t]he court may . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . ."  Section 3583(e)(3) provides that "[t]he court may . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, . . . ."

limited to the supervised release context. Our unpublished opinion in *Gillmore v. United States Parole Commission*, 124 F. App'x 941, 942 (6th Cir. 2005), so reasoned.

Regardless of *Dolfi*'s continuing vitality, Edwards suffered no harm from the reimposition of special parole because he would have forfeited his "street time" even if he had been serving regular parole. Under 18 U.S.C. § 4210(b)(2), the Parole Commission is empowered to determine how to award credit for street time following a parole violation.[4] Pursuant to that statute, the Parole Commission promulgated 28 C.F.R. § 2.52(c)(2), which provides that a parolee forfeits all street time if he is convicted of a new offense punishable by any term of imprisonment. The regulation reads:

> [I]f a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment . . . forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence.

28 C.F.R. § 2.52(c)(2). It is undisputed that Edwards was convicted of crimes punishable by terms of imprisonment subsequent to his release on parole. On at least two charges, Edwards did in fact serve time in prison. Accordingly, even if he had been on regular parole, he would have forfeited his street time.

Edwards attacks the validity of 28 C.F.R. § 2.52(c)(2), arguing that it is contrary to the express terms of 18 U.S.C. § 4210(b)(2). As Edwards notes, in general, a term of parole must terminate "no later than the date of the expiration of the maximum term . . . ." 18 U.S.C. § 4210(b). This means that, in the ordinary case, street time is credited.

---

[4]In pertinent part, 18 U.S.C. § 4210(b)(2) provides:

> [I]n the case of a parolee who has been convicted of any criminal offense committed subsequent to his release on parole, and such offense is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

However, § 4210(b)(2) creates an exception to that rule where a parolee commits an offense punishable by imprisonment while on parole. In those instances, the statute directs the Parole Commission to "*determine . . .* whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense . . . ." *Id.* (emphasis added). Based on this language, Edwards contends that the Parole Commission is statutorily bound to conduct case-by-case hearings with notice to the parolees and an opportunity to be heard.

The statute, however, does not mandate such case-by-case determinations. Even where Congress uses such language as "in each case," the Supreme Court has repeatedly reaffirmed that "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991). In *American Hospital Association*, the Court quoted administrative law scholar Kenneth Culp Davis:

> [T]he mandate to decide "in each case" does not prevent the Board from supplanting the original discretionary chaos with some degree of order, and the principal instruments for regularizing the system of deciding "in each case" are classifications, rules, principles, and precedents. Sensible men could not refuse to use such instruments and a sensible Congress would not expect them to.

*Id.* (quoting K. Davis, *Administrative Law Text* § 6.04, p. 145 (3d ed. 1972)). This has been the consistent holding of the Supreme Court with regard to regulatory statutes over the decades. *See Heckler v. Campbell,* 461 U.S. 458, 467 (1983); *FPC v. Texaco, Inc.,* 377 U.S. 33, 41-44 (1964); *United States v. Storer Broadcasting Co.,* 351 U.S. 192, 205 (1956). The statutory language in this case does not even say "in each case," but merely provides that the "Commission shall determine." It follows from the precedents just cited that the Commission is permitted to make its determination on an across-the-board basis, if in its discretion it decides to do so. Giving the words of the statute their usual and ordinary meaning, the Commission has *determined* "whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense . . . ." 18 U.S.C. § 4210(b)(2). The

applicable provisions of 28 C.F.R. § 2.52(c)(2) do not contravene the mandate contained in 18 U.S.C. § 4210(b)(2), and they require the forfeiture of street time in Edwards's case.

We recognize that the Ninth Circuit reached a different conclusion in *Rizzo v. Armstrong*, 921 F.2d 855 (9th Cir. 1990). It did so, however, by treating the Commission regulation as an incorrect *interpretation* of the statute, rather than as an exercise of delegated discretion. *Id.* at 861. But even when a regulation purports to "interpret" a statutory term, the regulation may serve as an exercise of properly delegated discretion. Indeed, this is the underlying reasoning of the famous *Chevron* case. In *Chevron, U.S.A. Inc. v. NRDC*, 467 U.S. 837, 842-44 (1984), a regulation defining a statutory term was held to be an exercise of delegated discretion. Here it is even clearer than in *Chevron* that the agency was given the power to make the determination, and the fact that the exercise of the power was in the form of a statutory construction should make no more difference here than in *Chevron*. The statute, as the Ninth Circuit itself emphasized, "makes forfeiture of street time in all instances a discretionary decision on the part of the Commission." *Rizzo*, 921 F.2d at 861. There is nothing to prevent the Commission from exercising the discretion on an across-the-board basis.[5]

---

[5]Even as a pure interpretation, the interpretation that street time *must* be forfeited under the regular parole statute is the subject of a circuit split, as recognized by the Ninth Circuit. *See Rizzo*, 921 F.2d at 860 n.4 (citing *United States ex rel. Del Genio v. U.S. Bureau of Prisons*, 644 F.2d 585, 588 (7th Cir. 1980)). We need not take sides in this split, as the Seventh Circuit's position would also require us to rule against Edwards. The split turns on different readings of the legislative history of § 4210. The House Conference Report states:

> This subsection also provides that an individual whose parole has been revoked upon conviction of any new criminal offense that is punishable by a term of detention, incarceration or imprisonment in any penal institution shall receive no credit for service of his sentence from the day he is released on parole until he either returns to Federal Custody following completion of any sentence of incarceration or upon the Commission determining that the sentence run concurrently with any new sentence that may have been imposed . . . .

> The phrase "punishable by a term of imprisonment, detention or incarceration in a penal facility" is intended by the Conferees to mean any term of confinement which may be levied upon adjudication of guilt or delinquency and does not include detention prior to adjudication. For example, a person convicted of any offense punishable by even one day of imprisonment would not automatically receive credit toward service of his sentence, even if no sentence of imprisonment was imposed.

H.R. Rep. No. 94-838, 94th Cong., 2d Sess., 31-32 (1976) reprinted in 1976 U.S.C.C.A.N. 351. The *Rizzo*

Edwards in this context also relies on the rule of lenity. However, as the Supreme Court noted, "[t]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, . . . such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 130 S.Ct. 2499, 2508–09 (2010) (internal quotations and citations omitted). As the foregoing discussion makes clear, no such "grievous ambiguity" exists in 18 U.S.C. § 4210(b), making the rule of lenity inapplicable.

Finally, Edwards makes an argument regarding his "salient factor score," used by the Parole Commission to recommend the length of prison time, but that issue is now moot. Following Edwards's conviction for wire fraud in 2007, his parole was revoked. This triggered the Parole Commission's duty to recommend a term of imprisonment to precede Edwards's re-parole. To make this recommendation, the Commission formulated a "salient factor score" that "serves as an aid in determining the parole prognosis (potential risk of parole violation)." 28 C.F.R. § 2.20(e). After utilizing a guideline table found in the applicable regulation, the Commission recommended in 2008 that Edwards serve 34-44 months in prison. Edwards now asserts that the Commission's salient factor score was incorrect and asks that "this Court . . . order Edwards's release, unless the Commission conducts a new salient factor scoring within a reasonable time, properly applying its regulations and justifying its result."

Edwards was, however, paroled from federal prison on January 10, 2010. "If events occur during the case, including during the appeal, that make it 'impossible for the court to grant any effectual relief whatever to a prevailing party,' the appeal must be dismissed as moot." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). Because Edwards has already been released from incarceration, that portion of this appeal is now moot.

court interpreted the last line of this legislative history as creating ambiguity as to the role of the Commission. However, the last line arguably only clarifies that the term "offense punishable by imprisonment" does not mean a felony, but any offense punishable by any amount of imprisonment. The legislative history thus suggests that Congress wanted street time forfeited, and if it does not require that forfeiture, at the very least gave the Commission the discretion to make that determination.

Edwards nevertheless insists that a case or controversy still exists because the alleged wrong—the inclusion in the salient factor scoring of two contested criminal dispositions—is capable of repetition. Edwards argues that he has violated parole in the past, and may do so again. It is true that the Supreme Court has recognized an exception to the case-or-controversy requirement for errors that are "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). We decline to presume, however, that an individual will likely commit criminal acts in the future or violate reasonably imposed parole terms. This challenge is therefore moot.

For the foregoing reasons, the district court's denial of Edwards's petition is affirmed.